Good morning, Your Honors. May it please the Court, I'm Alice Sinclair, Assistant Federal Defender, on behalf of Mr. Fowler, and I'm going to attempt to reserve about five minutes for rebuttal. This is a misdemeanor case, Your Honors, but it presents what I think is a very serious Confrontation Clause problem. The magistrate judge identified a violation of the Confrontation Clause, and it's that issue to which I wish to address myself this morning. Both Judge Nowinski, the magistrate, and I, in our written analysis of the claim, primarily discussed this circuit's precedents in Franklin and LaJoy, which I think are significant as examples of reasonable application of Supreme Court precedent. But I want to start this morning about talking more directly about the Supreme Court cases which govern this claim. Those cases are Davis v. Alaska, Delaware v. Van Arsdale, and Olden v. Kentucky. In all three, the Supreme Court found that the Confrontation Clause was violated by the trial court's preclusion of cross-examination of a critical prosecution witness on facts unrelated to the charges, but related to the witness's reliability in the case at question. Now, the reliability problems that were presented in those three cases were different from one another, but the rule applied was the same. As the Court said in Davis, to effectuate confrontation rights, the defense must be able to expose to the jury facts from which jurors can draw inferences about witness reliability. In the Van Arsdale case, the Court explained further that the central question is whether the jury was permitted to accurately assess witness credibility, and the question is whether, for confrontation purposes, the question is whether the jury, if it had received the defense evidence, would have had a significantly different view of the witness's credibility. Now, let's talk about what those reliability issues were in the cases, because I think it's significant. In Davis itself, the witness was a juvenile fact witness who testified that he had seen the defendant with a crowbar near the scene of a robbery of a safe. So it was an I.D. witness. The issue was the reliability of that identification. Not bias against this particular defendant, not fabrication of evidence, but the reliability of the I.D. The defense wanted to say this was an identification made in haste, because the juvenile was afraid he would get his own probation revoked if he didn't cooperate with the police, or that he might be a suspect, because his probation was for a theft. In Van Arsdaal, we also have a fact witness, and the issue was whether that witness was cooperating with the prosecution, invested in helping to obtain a conviction, because the witness had gotten an unrelated charge dismissed in exchange for that cooperation. In Olden, we had an entirely different situation. What the defense called a false cry of rape, and what the defense saw as a consent case. The facts had to do with a relationship between the complaining witness and another fact witness. The two of them, in fact, had been having an affair at the time, and the defendant was the complainant's lover's half-brother. It's a bit hard to follow. But the defense theory was that she had lied and accused a man of rape after consensual sex so that her lover would not find out she had slept with his half-brother. A very different type of reliability problem, but one to which the facts unrelated to the charges were relevant. Turning to this case's precedence, in Franklin, where we had a 5-year-old making a claim of child sexual abuse, the issue was not that the child was deliberately lying. The defense theory was that in that case, we had a very young child who, for reasons that are not apparent from the record, had fantasies about adults performing sexual acts, and had had such fantasies about her own mother, which raised reliability questions. In LaJoy, almost inverse facts. There had been actual sexual abuse, but knowledge of the fact that this child had been exposed to direct sexual abuse herself would help to explain why she would have ideas or language about adults doing such things. Those cases are all distinct from each other. In the theory going to the problems with reliability and why the defense needed to cross-examine, Mr. Fowler's is a slightly different situation. But the same rule that governed each of those questions required the court to permit Mr. Fowler to cross-examine the complaining witness about the fact that she had previously made accusations against a mother's boyfriend for touching her crotch over her clothes while touching her in a way that the man acknowledged had happened but did not involve any genital contact. And what do we do with the judge's, and I guess this was the Sacramento County Superior Court trial judge's comment, that if I'm going to allow this evidence in, we're now going to have a mini-trial within the major trial because it's not clear. There is some indication that a touching occurred, but it's not clear that it was necessarily a false accusation. And now we're going to have to ask this trial jury to go back and re-litigate that prior incident in order to decide whether or not she was telling the truth. Your question raises two points, which I'll address in reverse order. I'll start with the one I think you were focusing on, which is confusion of issues and taking up too much time. The other issue has to do with whether or not it was a false accusation and what that means. And you would concede, would you not, that the Supreme Court has said, even in cases like Davis, Van Arsdell, and Olden, that the trial judge still retains the discretion to restrict cross-examination if we start to get into these kinds of problems. What Van Arsdell says very explicitly is that the trial judge may not exclude cross-examination on the facts about reliability entirely, but may limit the scope and manner of such cross-examination. The trial judge in this case did not even entertain the defense lawyer's explicit request that they create such time, manner, and scope restrictions. That's at tab one, pages 31 through 34. The defense lawyer said, we can do this as we are doing the shoplifting incidents, because the girl had stolen from some stores, he was allowed to cross-examine her about that, much less probative as to her reliability regarding sexual matters. But the same thing could have been happened. Defense lawyer cross-examines girl. Did this happen? Did you say X, Y, Z initially, and did you then recant a few months ago? Find out what she has to say. If she testifies differently than the documentary evidence, the documents, in this case, Bakersfield Police Reports and the transcript of her later revision of that incident, could be used directly in cross-examining her. The defense also sought to put on, if necessary, if she flat-out denied everything and, in his view, was perjuring herself, to call the man accused in the prior incident as a rebuttal witness. To be honest, Your Honors, had the trial court permitted the cross-examination about the facts, permitted the use of the documents in cross-examination, but said, well, we're going to restrict it, I don't want it to go on more than an hour, and I'm not going to let Mr. Hendricks testify, we probably would not be here, but he wasn't even allowed to ask the question. Did you accuse one of your other mother's other boyfriends of touching you in a similar way? Didn't you tell the officer in Bakersfield this? Didn't you say more recently, being interviewed, that you didn't really think it happened like that after all, that you maybe were exaggerating? Those are the questions that needed to be asked. I guess the question I'm getting to is, had there been a definitive showing that she had lied, and I understand what you're saying, had the court conducted a hearing outside the presence of the jury where that could have been determined, we'd know the answer. But as I understand what the trial judge was saying is, depending on how she answers that question, we may very well find ourselves having to litigate the veracity of that prior incident and try and figure out whether she was lying or telling the truth. Well, I think it's important to bear in mind that the theory, the defense theory about her unreliability, didn't turn narrowly on construing her prior statements as lies, meaning out-and-out fabrications. The theory was that something had happened that she had perhaps misperceived as sexual and she had exaggerated the facts of it to fit her misperception, later recanting that misperception. The fact of... Recanting? Wasn't the word something like, it wasn't that big a deal? Let's call it revising. But in the initial police report, she had specific... But characterizing. Mischaracterizing, then, I would say, because Judge Talman, in tab one, if you read the police reports, she said specifically, he grabbed and squeezed my crotch four times. That's not describing an accidental bumping. That's describing a deliberate touch to her genitals. She then later said, he was flying me into bed, I might have thought he bumped me, Mom made a big deal out of it, I don't think he meant it. In my view, that is a revision of the facts. Was that the one where, I guess, the police or the prosecutor no-filed it because it was essentially determined to be unfounded or not provable? The officer deemed it unfounded, specifically on the grounds, or substantially on the grounds, that the mother had been present during the carrying of the child into bed when the child said this happened. She said she did not see any such contact. Further evidence before the superior court that the initial allegations of the child were not accurate, were not necessarily made up whole cloth, but were not accurate. So there was information before Mr. Fowler's judge to indicate that those initial statements had not been accurate. What you said was, so I was thinking I was just, like, a little cautious about things in referring to the first incident with Tommy Filson. Your Honor, that is a, yes, what she's saying there, and this is in her interview contemporaneously with the Fowler case, is that she had been overly cautious regarding Hendricks, the mom's boyfriend, because she had been previously molested. And the jury knew none of this. It would have been highly relevant to assess her reliability, and the judge didn't allow her to go there. And by not even considering, under Van Arsdal, the defense lawyer's suggestion that the time of cross-examination be limited, that they have agreements in advance about how far he could go with this, is objectively unreasonable. Under Van Arsdal, Van Arsdal and Davis say policy concerns about protecting a juvenile witness or protecting a witness for any reason, even when there is a law, such as a rape shield law in place, that would be the Michigan v. Lucas case. And as an aside, the California rape shield law did not apply here, because it applies to specific sex crimes, which do not include the charges against Mr. Fowler. But where there are such policy considerations, they may not trump confrontation rights. It's when you have those considerations that the judge can exercise discretion in limiting the cross, saying you need to stop now, Mr. Rothschild, don't badger the witness, but we have to let the jury know that this is out there. Roberts. Roberts. Let me tell you where my difficulty with your case comes. If this were on direct appeal, I think your argument is very, very powerful. Did he take this to the California Supreme Court? It was presented to the California Supreme Court. Did he take it to the U.S. Supreme Court? I do not recall offhand if a cert petition was filed. I don't believe so. But there, of course, he's got the opportunity of taking on direct appeal to the U.S. Supreme Court precisely the Confrontation Clause question that would be an extension of Oldham and Davis and Van Arsdal. We are now here being asked to second-guess the California courts on a matter in which the Supreme Court has said Confrontation Clause rights are very important. We take them very seriously. But nevertheless, we understand that trial judges must have broad discretion in admitting evidence, and there's a number of considerations that they take into account, including such things as whether this would be a distraction to the jury, because we're conducting a mini-trial as to whether the evidence is not terribly relevant. And so the trial judge seems to have conscientiously tried to have fit this case into those preexisting categories that the Supreme Court has recognized. So what you're up against here is trying to demonstrate that this is not simply wrong, which would be the standard that we would use on direct review, but that it is objectively unreasonable. It's an unreasonable application, and it's a clear, and that the California courts should have recognized this and should have corrected it themselves, and that the only reason we're here is because we are the last stitch effort. I understand that concern, Judge Bivey, and my answer to that is, A, this Court has found unreasonable application of exactly these precedents in other Confrontation Clause cases, LaJoy, DePetris v. Kukendall, Thomas v. Hubbard. Are those EDPA cases? Those are all EDPA cases. Franklin was not, but we contend that it nonetheless constitutes reasonable application of these principles. The primary thing to which I point you for the unreasonableness here is, again, that the Van Arsdaal proclamation, that the judge has to consider ways to limit the manner and scope to protect a witness, but may not completely exclude was ignored by the superior court judge, even though exactly that approach was taken to evidence that the child had shoplifted, which was not probative of her reliability as to sexual matters. It did not have the same confrontation implications, frankly. So where the Confrontation Clause wasn't implicated, the judge was able to say, okay, we can prevent a mini-trial here simply by limiting how long you cross-examine her about the shoplifting incidents, and they did so successfully. But when it came to an issue where Mr. Fowler had a confrontation right that was explicitly asserted, that was not entertained. And that, I do believe, is objectively unreasonable under Van Arsdaal. If there are no more questions, I'd save the remaining time for rebuttal. Very well. Thank you, Ms. Blair. All right. Mr. Hendrickson. Good morning, Your Honors. George M. Hendrickson, Deputy Attorney General for the Respondent in this case. The issue, of course, before this Court is whether the State Board decisions were unreasonable. As I believe the Court has mentioned, it was tried before the Municipal Court in Sacramento County. I believe it was still the Municipal Court before the consolidation with the Superior at that time. It was taken up on a direct defendant's appeal to the Appellate Division of the Superior Court, which affirmed the conviction. And then Mr. Fowler filed a writ of habeas corpus in the California Supreme Court. If my memory is correct, wasn't there another appeal from the Appellate Division of the Superior Court as a matter of grace to the District Court of Appeal at the time? One is available. That wasn't taken? It wasn't taken. Does that have any effect here? I'm sorry. Exhaustion? Actually, I can't say whether they petitioned for a, I'm sorry, it would be an application for certification for transfer to the Court of Appeal, which would be a matter of discretion by the Superior, I'm sorry, by the Court of Appeal since there was no published opinion. You don't know whether that was done or not? I do not know whether that was done. I believe that my approach to this case was that the issue was presented to the California Supreme Court by way of habeas corpus. But for purposes of determining the scope of review, it's important that the presentation on habeas to the California Supreme Court was based on the trial record. There was no attempt to raise any new or any additional facts. So it's our position that basically this Court's review is squarely based on the trial record. As Van Arsdale stated... Trial record and the, what, very brief written decision that we have from the Appellate Division of the Sacramento County Superior Court? Right. That would be, yeah, the decision itself would indicate, obviously the decision that the Supreme Court could consider that. As it shows, I'm having, I'm not sure that I can acquaint the Court with how on habeas corpus the Supreme Court would view the Appellate Division's decision affirming the judgment because in theory the habeas is a brand new action. One would expect a degree of deference, but I can't think of a specific rule on that. As the District Court noted, Van Arsdale permits wide latitude. The Supreme Court decisions state that there is a right of confrontation, as certainly we acknowledge, but the precise contours are unclear. And we think that the Supreme Court cases don't compel a decision one way or the other. Counsel, if this were direct appeals, is the State willing to go so far as to admit that this is probably error? Oh, no. But it's simply not objectively unreasonable under the ADIPA standard? Well, no, we certainly don't because, you know, we certainly, the Sacramento County District Attorney defended this case on direct appeal of the Appellate Division. Under State law, and I'm rather hoping that the Federal law is the same thing, that review for the exclusion of evidence is based on an abuse of discretion. And discretion can be abused if the wrong law is applied.  We've had two separate discussions on the issue. It was also submitted with the police reports in the Hendricks incident from Bakersfield and at some point had the transcript to the multidisciplinary interview center, interview of the victim before the trial court. The trial court had all these things. Let me ask you about the analysis of the trial judge regarding the prejudice outweighing the probative effect of the evidence. Yes. Now, let's first of all go to the issue of prejudice. Prejudice as to whom? What did he weigh as to the prejudice here? Was it the prejudice as to the victim? Was it the prejudice as to some other interest? What was the prejudice here in keeping the evidence out? Well, under Evidence Code Section 352, the trial court is authorized to exclude evidence if the probative value is substantially outweighed by the danger of confusion of the issues, undue conception of time. Was there any consideration that the evidence would come in and would hurt the victim? Was that a consideration at all in the trial judge? We have argued that the trial judge could properly consider that, but I don't recall the trial judge ever expressing a prejudice. Because it would be a surprise that he would let in evidence of her shoplifting, which goes to her character, and not evidence of her exaggeration. But shoplifting is pretty clear that under state law that a witness can be impeached with a prior criminal act. A prior criminal act and a misdemeanor under 788? I'm sorry? That has to be a felony, doesn't it? No. Under state law, a witness is very clear that a witness can be impeached with a prior criminal act evidencing moral turpitude. And it's also very clear under state law that theft is a crime of moral turpitude. Even if it's a misdemeanor? Yes. It doesn't, well, felony, under the penal code, a felony is automatically impeachable except that that rule has been limited by the Supreme Court to felonies involving moral turpitude. But after the Truth in Evidence initiative in 1982, Proposition 8, the courts have said that impeachment with a witness or a witness with a crime involving moral turpitude is proper. And one of the things in California that is very solidly established to show moral turpitude is theft. And so I don't... All right. Now, what would you say to Ms. Clare's position that the judge didn't reasonably analyze the issue of waste of time or confusion of the issues? We agree with the trial judge. You can't simply look at the evidence that the defendant was intending to offer. You also have to look... Well, as one of the judges said, what might happen if the victim testifies in a particular way? Depending on how the victim testified, it could devolve into a mini-trial. Although, frankly, that was outside the offer of proof in the sense that defense counsel didn't suggest that the victim was going to testify contrary to the primary statement he was relying on. And, in fact, that was the statement at the MDIC interview that I believe Judge Bisbiby quoted a minute ago. What about... I mean, why was it a mini-trial? Did you say this on this occasion? Yes or no? Well, part of it is... If it says no, then you prove the statement. ...is that the mini-trial would involve rebuttal. How long would the mini-trial take? Maybe an hour? Could be longer. And also there's... How could it be longer on the offer of proof made? Was there any rebuttal testimony by the district attorney saying that if you call her cross-examiner on this, we're going to have to call a psychiatrist to explain her life and take days and days to get the full purport of this evidence in?  But it could involve... Where is the evidence that it was going to be a mini-trial for more than an hour? In fact, it would involve... Well, Hendricks itself, if it required anything, it would involve the victim's mother and it could involve questioning the victim on all these things. The question was not what Hendricks did. It's what she said Hendricks did and whether she acknowledged exaggerating it because of what happened with Filson. You don't need Filson. You don't need Hendricks. You don't need the mother. You don't need anybody but Lara. That's the one you need. Where's the mini-trial? Where's the evidence that shows us that the court was not objectively unreasonable in saying this is going to be a mini-trial? It simply could involve those three witnesses. It could involve Hendricks himself, the mother... Where was the offer of proof by the district attorney that it would ineluctably involve the witnesses so that there would be a mini-trial? It wouldn't necessarily but that was the trial judge's conclusion that it could well. From what? Based on... From what objective reasonable evidence? From the defense offer of proof and also the matters that were submitted. The defense offer of proof was we're going to call Lara, we're going to ask her whether she said this and we're going to ask her whether she exaggerated on a prior occasion. That's the defense offer of proof. Now where is the defense offer of proof we're going to call Hendricks, we're going to call Filson, we're going to call Lara's mother? That wasn't there. They said that they had Hendricks ready to testify. They had Hendricks ready to testify in case Lara went off the reservation. Right? Well that's hard to tell frankly because the the entire defense theory was that this was a false report and it doesn't... Or an exaggerated report. But there has to be an element of falsity otherwise it's not relevant. No, there could be an element of exaggeration that makes it relevant as to the credibility to be given to the subjective recital  Correct? But unless it's... It could be false. Yes. It could be a misperception. It could be an exaggeration. There has to be an element of falsity. Why? The explanation otherwise it's irrelevant. What is the basis of that? There has to be an element of falsity whether it's by exaggeration or in this other case from fantasy... Okay, if you define falsity as including exaggeration that's different. Exaggeration to the point of falsity because otherwise it has absolutely no effect on the case involving Mr. Fowler. You have to get to the inference that the victim said something false about this prior incident otherwise it has no effect on the current case and I think that is one of the things that the trial court focused on is that the probative value of this evidence was really very tiny in comparison to to the danger of undue consumption of time and confusion of the issues as the trial court said the jury is going to wonder why we're here trying this seven-year-old case and in fact the defense theory was this was part of a pattern that was touched off by the Tommy incident which was a genuine molest and so in order to show the pattern you have to show that in fact there was a Tommy incident and there may be different ways of doing that but in fact you do have to show evidence of that so you have potentially a third witness involved or at least a fourth witness involved or a fourth source of information now one thing surely we can attribute more to the credibility of juries than that though juries deal with complex cases all the time well that's true this is not like we're writing two prior incidents that were fairly brief one resolved against Tommy Filson at least with respect to the other girl that was with her that's true but I think the bottom line and that's what the trial court was especially concerned with is that the probative value was essentially zero or nothing and against that it could weigh the danger of confusion of the issues and conception of time if the witness has admitted on a prior occasion that on a similar charge she has exaggerated you're saying that that is not probative as to what she's saying on a similar charge in this but I don't think it was that big of a deal and cautious could easily mean shouldn't the jury determine that rather than you or I the trial court has to look at the offer of proof and determine whether the evidence even goes before a jury weighing the probative value against the danger of undue conception of time and confusion of the issues in this case the as we've argued the state law requires an offer of proof stating the substance purpose and relevance of the issues the the offer of proof the offer of proof was certainly adequate for the judge to make up his mind okay that's fine we think so the well whether it was that big a deal is we think entirely consistent with the actual facts and one thing I do want to stress and this was in the police report it's not a big deal but the victim was wearing blue jeans at the time of the Hendricks incident which does tend to reduce the inference that there was some danger of confusion of the issues that there is some danger of waste of time and therefore exclude the evidence and we think that the main logical fallacy in the defense argument is that there is a lack of any inference of falsity from the defense offer of proof in essence what the defense was attempting to do was impeachment by innuendo the standard is that the    to do is to  the case that there was some confusion in the defense argument and therefore the defense was trying to make clear that there   confusion in the defense argument and therefore the defense was trying to make clear that there was some
judges: Tallman, Bybee, Bea